Michael Machat, Esq.
MACHAT & ASSOCIATES, P.C.
433 N. Camden Drive., Suite 400
Beverly Hills, California 90210
Telephone: (310) 860-1833
Telefax: (310) 860-1837
Email: info@machatlaw.com

Attorneys for Plaintiffs
TI Beverage Group, Ltd
And Michael Machat

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TI BEVERAGE GROUP, LTD and MICHAEL MACHAT, <br><br> Plaintiffs, <br><br> vs. <br><br> YARD HOUSE USA, INC., <br><br> Defendant. | CASE NO. <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT; UNFAIR COMPETITION and DILUTION** <br><br> **DEMAND FOR JURY TRIAL** |

For their Complaint, Plaintiffs TI BEVERAGE GROUP, LTD and MICHAEL MACHAT hereby allege and assert as follows:

## I.     JURISDICTION AND VENUE

1.     Plaintiffs bring this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks

in violation of the Lanham Act.

2.  This action arises under the Trademark Laws of the United States, including particularly, Section 43 of the Lanham Act, 15 U.S.C. §1125. Jurisdiction is conferred on this Court by 15 U.S.C. Section 1121(a), by 28 U.S.C. Section 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*, and by principles of pendent jurisdiction. Venue is proper in this District under 28 U.S.C. §§ 1391(b) by virtue of the fact that a substantial part of the events or omissions giving rise to the claim occurred within this District.

## II.   THE PARTIES

3.  Plaintiff TI Beverage Group, Ltd. ("TI BEVERAGE GROUP") is a Delaware Corporation with its main business office located in Los Angeles County, California.

4.  Plaintiff Michael Machat is a US Citizen residing in Los Angeles County, California.

5.  Defendant Yard House USA, Inc., is, upon information and belief, a Delaware Corporation, headquartered in Florida and doing business as, and operating bars and restaurants under the name YARD HOUSE (hereinafter referred to by its dba "YARD HOUSE") in approximately 20 States in the United States, including California. Within California, YARD HOUSE has many locations, including Los Angeles, Marina Del Rey and Pasadena within this District.

## III.   FACTS GIVING RISE TO THIS ACTION

6.  Plaintiff TI BEVERAGE GROUP has been marketing food and beverages under the following brand names for many years, including: VAMPIRE (for wines – US Trademark Registration No. 2263907); CHATEAU

2

DU VAMPIRE (for wines – US Trademark Registration No. 3502158); DRACULA (for wine – US Trademark Registration No. 3319536); VAMPYRE (for Spirits – US Trademark Registration No. 3082097); VAMPIRE (for Beers – US Trademark Registration No. 4242359); VAMP H20 (for Water – US Trademark Registration No. 3895288); VAMPIRE LOUNGE & TASTING ROOM (for Bar and Wine Bar Services – US Registration No. 4079879); VAMPIRE (for Restaurant and Bar Services – US Registration No. 3978444);  and VAMPIRE (for Glass beverage-ware -- US Trademark Registration No. 3290011).

   7. TI BEVERAGE GROUP is the exclusive licensee of Michael Machat, who, along with his law firm, Machat & Associates, PC, is the Registrant for all of these aforementioned brands.   By virtue of its extended use in commerce, several of the aforementioned VAMPIRE registrations have become incontestable, including its registration numbers 2263907, 3290011, 3082097 for wines, glassware and spirits, respectively.

   a) TI BEVERAGE GROUP also is the exclusive licensee of the slogans TASTE OF IMMORTALITY and SIP THE BLOOD OF THE VINE, (TM Registrations 3167606 and 3079403, respectfully, also registered in Machat's name.)  Both of these marks have become incontestable.

   b) The origin of Vampire wine, and TI BEVERAGE GROUP's claim of right goes back to 1988, when Machat released a French bottled Algerian Syrah under the brand name Vampire.  The first sale was to MCA Records and Alice Cooper, and Machat promoted the wine under the slogan, "Sip the Blood of the Vine" and explained on the back label that the reason no one hears stories about vampires attacking humans anymore is because Vampires have been drinking Vampire wine instead.  The label went on to state that "A trickle of this full bodied Vampire Wine will satiate and prolong the life of any normal blood sucking human predator."  Although the labels have changed over the years, and the explanation has been condensed, the slogan "Sip the Blood of the Vine" has remained ever

since. Machat began to use the slogan "Taste of Immortality" by at least 1995, if not earlier.

8. The marketing for Vampire wine has playfully suggested that the Vampire Vineyards are run by a group of Vampires and that Machat, a mere mortal and attorney, is the front for a circle of Vampires.

9. Towards the end of 2001, Plaintiffs expanded its line of beverages to include an energy drink called VAMP. The marketing for VAMP also playfully suggested a connection to vampires. Plaintiffs have expanded its VAMP brand to water and more recently electronic cigarettes [US Trademark Registration No. 4318651.

10. Approximately one year later in 2002, Plaintiffs began selling a red colored vodka under the name VAMPYRE. Like the marketing behind Vampire wine, the marketing material created for VAMPYRE vodka back in 2002 explained that Vampires have been drinking VAMPYRE vodka for years.

11. Similarly, TI BEVERAGE GROUP, either by itself or through its predecessors in interest, has been selling a red colored energy drink under the brand name VAMP (which is an abbreviation for Vampire.) Also, TI BEVERAGE GROUP, either by itself or through its predecessors in interest, has also been selling DRACOLA, a red soda with a cola flavor.

12. In addition to the aforementioned beverages with a Vampire twist to its name, TI BEVERAGE GROUP also sells Vampire Fine Belgian Chocolate and Vampire Gourmet Coffee. On August 18, 2009, the USPTO issued a trademark registration [US Trademark Registration No. 3669827] in Machat's name for Vampire for Chocolate and Coffee. That Trademark registration has since become incontestable. Machat has licensed the rights to sell Vampire branded chocolates and coffee to TI BEVERAGE GROUP.

13. In 2011, Plaintiffs expanded into the restaurant space when it opened its VAMPIRE LOUNGE & TASTING ROOM in Beverly Hills, California. The

4

VAMPIRE LOUNGE & TASTING ROOM offers a selection of cheeses, charcuterie, dips, bread, olive oil, balsamic vinegar, coffee and chocolate along with its family of Vampire branded wines.

14.     Plaintiffs' natural zone of expansion includes other foods, such as tomato sauce, barbecue sauce, hamburgers, and other restaurant venues.  Plaintiffs have plans for each of these.

15.     Plaintiffs' VAMPIRE family of brands are available for the world to see on its website VAMPIRE.COM, and Plaintiffs' family of VAMPIRE Brands have received coverage in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, The Star Tribune, The Chicago Sun Times, and many more. In addition Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper for approximately five minutes with Ashley Greene from Twilight fame, CNN Headline News, MTV's Viva La Bam, Food TV, and many more.

16.     Unbeknownst to Plaintiffs until recently, defendant has begun to market food in its restaurants using Plaintiffs' Vampire mark.  Specifically, defendant's menus market tacos as a "VAMPIRE TACO" and defendant uses the mark "VAMPIRE STYLE" to excite potential customers about its food and/or beverage offerings.

17.     Indeed the fact that defendant is not just attempting to use the VAMPIRE mark as a descriptive term but is instead knowing and intentionally using it as a trademark is evidenced by the fact that defendant has trademark applications pending for both VAMPIRE TACO (US Trademark pending application no. 86331348) and VAMPIRE STYLE (US Trademark pending applications nos. 86112084 and 86486440.)

18.     If defendant is not stopped from marketing food products and restaurants using Plaintiffs' Vampire Mark or a mark confusingly similar to

5

Vampire, then consumers will likely be confused about the source and origin of defendant's products and services and mistakenly conclude that defendant's products or services are produced by, or associated with Plaintiffs.

19. Alternatively, if defendant is not stopped from marketing food products and restaurant services using Plaintiffs' Vampire mark or a mark confusingly similar to Vampire, then consumers will likely be confused about the source and origin of Plaintiffs' products and services and mistakenly conclude that Plaintiffs' products or services are produced by, or associated with defendant.

## COUNT I

## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)

20. Plaintiffs reallege the allegations in paragraphs 1 though 19.

21. Defendant has large resources with which to market and advertise its goods and services. Defendant's resources vastly exceed those of Plaintiffs. Consequently, marketing and advertising efforts by Defendants are likely to mislead consumers to believe that Plaintiffs' goods and services may be unauthorized use of trademarks that YARDHOUSE owns. Consumers are likely to be misled to believe that Plaintiffs are misusing the *VAMPIRE* mark. As a result, Plaintiffs' reputation and goodwill will be impaired.

22. Also, Defendant's uses of the word VAMPIRE as a branded taco and service so closely resembles Plaintiffs' products and services that the public is likely to be confused and deceived, and to assume erroneously that defendants' goods and services are those of Plaintiffs, or that defendants are in some way connected with, sponsored by, or affiliated with Plaintiffs, all to Plaintiffs' detriment and irreparable damage.

23. Defendant is not affiliated with, connected with, endorsed by, or sponsored by Plaintiffs, nor have Plaintiffs approved or authorized any of the goods or services offered or sold by defendants.

6

24. Plaintiffs have no control over the nature and quality of the goods and services offered and sold by defendants or its licensees. Any failure, neglect, or default by defendants or its licensees in providing such products or services will reflect adversely on Plaintiffs as being the believed source of said failure, neglect, or default, thereby hampering Plaintiffs' efforts to continue to protect its outstanding reputation and preventing Plaintiffs from further building its reputation. Said failure, neglect, or default will result in loss of sales by Plaintiffs, and loss of value of Plaintiffs' considerable expenditures to promote its goods and services under the VAMPIRE mark, all to the irreparable harm of Plaintiffs.

25. Without the knowledge or consent of Plaintiffs, Defendant has marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded under the name VAMPIRE and continue to do so. Defendant has promoted, advertised, offered for sale, and/or sold, products and services using the VAMPIRE mark through persons not authorized, employed by, or associated in any way with Plaintiff and have used the aforementioned trade name and trademark as false designation and false representation for beverage products.

26. None of the activities alleged in this complaint have been authorized by Plaintiffs, and such unauthorized use by Defendant of Plaintiffs' trademarks and/or trade names in interstate commerce, commerce substantially affecting interstate commerce in this district, and elsewhere throughout the United States, constitutes infringement and an inducement to infringe Plaintiffs' trademarks and/or trade names, and such activities are likely to cause confusion, mistakes, and to deceive the public at large.

27. Upon information and belief, Defendant has acted with the unlawful purpose of:

    a. Improperly taking advantage of the valuable goodwill belonging to Plaintiffs;

7

    b. Soliciting Plaintiffs' customers and/or potential customers, attempting to sell, and selling to such customers and potential customers, goods and services marketed under the VAMPIRE mark through persons not authorized by, employed by, or associated in any way with Plaintiffs;

    c. Inducing others to infringe Plaintiffs' trademarks and trade names; and

    d. Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiffs to be falsely represented as if they were rendered, authorized, sponsored by, endorsed by, or otherwise connected with Plaintiffs and its licensed trademarks and trade names.

28. Defendant's conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

29. If Defendant is allowed to continue marketing and selling the accused goods and services, Plaintiffs will be damaged as alleged in this complaint, and the Defendant will profit thereby. Furthermore, unless the Court permanently enjoins Defendant's conduct as alleged in this complaint, Plaintiffs' business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

30. Defendant's aforementioned acts and conduct is being done willfully and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiffs have worked hard to develop. Plaintiffs are therefore entitled to treble damages arising therefore, as well as reimbursement of Plaintiff's attorneys' fees and costs.

31. The intentional nature of defendant's acts makes this an exceptional case under 15 U.S.C. §1117(a).

32. The intentional nature of defendant's acts and conduct makes this a case suitable for an award of Three Times Defendants' profits.

## COUNT II

### VIOLATION OF LANHAM ACT 15 U.S.C. §1114

33. Plaintiffs repeat each allegation contained in paragraphs 1 through 32 as though set forth herein at length.

34. Defendant has engaged in, and continues to engage in, the wrongful exploitation of Plaintiffs' registered marks.

35. Defendant's goods are so closely related to Plaintiffs' goods that the public is likely to be confused, to be deceived, and to erroneously assume that Defendant's marketing and sale of their VAMPIRE branded goods and services, as packaged, advertised and promoted, are those of Plaintiffs, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiffs, all to Plaintiffs' detriment and irreparable damage.

36. Defendant is not affiliated with, connected with, endorsed by, or sponsored by Plaintiffs. Furthermore, Plaintiffs have not approved any of the goods or services offered or sold by the Defendant..

37. Defendants' aforesaid infringing conduct has been willful and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiffs have worked hard to develop. Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their Vampire branded tacos and restaurant services will doom the prospects of future commercial success of Plaintiffs' VAMPIRE family of brands, including its foray into the restaurant space. Plaintiffs are therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiffs' attorneys' fees and costs.

9

## COUNT III

## VIOLATION OF LANHAM ACT 15 U.S.C. §1125c

### (Against All Defendants)

38. Plaintiffs repeat each allegation contained in paragraphs 1 through 37 as though set forth herein at length.

39. Plaintiffs' Vampire family of brands have appeared on The View, Anderson Cooper, CNN Headline News, Entertainment tonight, MTV's Viva La Bam, The Food Channel, A & E, and have been written up in widely circulated magazines such as Star Magazine, Shape, Maxim, InStyle, Elle, Spin, Rolling Stone, Marie Claire, Cosmo Girl, The Wine Enthusiast, and in regional newspapers such as the LA Times, the NY Times, the Houston Chronicle, and others, and as such have developed a fame all of their own catapulting the Vampire brand into the category of a famous mark.

40. Plaintiffs fear that defendant's marketing excursions into the world of vampires using the word Vampire as a mark for goods and services will cause consumers to believe that Plaintiffs' Vampire branded wines (and other goods and services) are not of as high quality as they actually are and will tarnish, dilute and otherwise damage the reputation of Plaintiffs' goods and services. This will lead to irreparable harm to Plaintiffs' goodwill, reputation, and sales.

## COUNT IV

## UNFAIR COMPETITION – COMMON LAW, AND CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 et seq.

41. Plaintiffs repeat each allegation contained in paragraphs 1 through 40 as though set forth herein at length.

42. Defendant has engaged in unfair competition perpetrated against Plaintiffs by reason of the conduct alleged herein.

43. The unlawful and unfair conduct is injuring the goodwill of Plaintiffs.

44. Defendant is liable for the unfair competition, and/or is liable for aiding and abetting such conduct.

45. By this conduct, Plaintiffs have directly suffered injuries and each Defendant has been unjustly enriched.

46. Plaintiffs are entitled to restitution, the recovery of damages, and the recovery of the profits earned by Defendant by virtue of their conduct.

47. As a consequence of the unfair competition by Defendant, Plaintiffs are suffering irreparable injury, by reason of which such conduct should be enjoined.

48. Plaintiffs are entitled to reasonable attorneys' fees.

49. Plaintiffs are informed and believe, and on that basis alleges, that the aforementioned conduct of Defendant is willful, oppressive, fraudulent, and malicious, and Plaintiffs are therefore entitled to punitive damages.

### COUNT V
### UNFAIR COMPETITION – COMMON LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500 et seq.

50. Plaintiff repeats each allegation contained in paragraphs 1 through 49 as though set forth here at length.

51. Defendant's use of Plaintiffs' family of VAMPIRE brands and trademarks misrepresents the nature, characteristics, identity, and source or sponsorship of Defendant's goods and services, constitutes aiding and abetting liability for deceptive, untrue, and misleading advertising and therefore constitutes a violation of, inter alia, California Business and Professions Code §§17500 et seq. and California common law.

52. Defendant's use of Plaintiffs' family of VAMPIRE brands and

trademarks is likely to deceive and will continue to deceive the consuming public. Defendant knew, recklessly disregarded, or reasonably should have known that such packaging, advertising, marketing, and promotion was untrue and/or misleading.

53. As a result of the conduct described above, Defendant has been and/or will be unjustly enriched at the expense of Plaintiffs and the general public. The interests of the general public and Plaintiffs are, therefore, closely related.

54. Defendant has been unjustly enriched, among other things, by the receipt of sales revenues from consumers who mistakenly thought that they were purchasing Plaintiffs' VAMPIRE goods and services, but instead were purchasing Defendant's goods and services which are promoted and sold through advertisements that affirmatively misrepresent, either directly or by implication, the nature, characteristics, identity, and source or sponsorship of the goods.

75. Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs, on behalf of itself and the general public, which is unable effectively to assert its interests, seeks an order of this Court ordering Defendant immediately to cease such acts of unfair competition and false advertising, and enjoining Defendant from continuing to market, promote, advertise, offer for sale, and sell, and advertises goods or services using the Vampire mark. Plaintiffs additionally requests an order disgorging Defendant's ill-gotten gains and restitution of all monies wrongfully acquired by Defendant by means of its acts of unfair competition and false advertising. Plaintiffs further request they be paid interest and attorneys' fees.

WHEREFORE, Plaintiffs pray for judgment as follows:

1. That the Court adjudge and decree that Defendant has falsely designated the origin of certain goods and services as those of Plaintiffs, have made

12

and used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiffs at common law.

2. That the Court adjudge and decree that Defendants have infringed Plaintiffs' registered VAMPIRE trademarks.

3. That the Court adjudge and decree that Defendants unlawfully diluted and diminished Plaintiffs' rights in its VAMPIRE family of trademarks.

4. That the Court permanently enjoin Defendants, its agents, servants, employees, attorneys, and all persons acting in concert or participation with them, or with any of them from:

   a. Using VAMPIRE, or any other word or words which are similar to, or a colorable imitation of, Plaintiffs' trade names and marks, either alone, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and/or promotion of beverage products and beverage accessories;

   b. Selling, offering to sell, marketing, distributing, advertising and/or promoting any FOOD or BEVERAGE product, goods or service with the word VAMPIRE displayed on any product, packaging, advertising or promotional materials;

   c. Representing directly or indirectly by words or conduct that any food or beverage product, goods or services offered for sale, sold, promoted, or advertised by Defendant, is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiffs;

   d. Aiding or abetting in unfair competition against Plaintiffs;

   e. Aiding or abetting in false advertising; and

   f. Inducing others to engage in any of these aforementioned acts.

13

5. That the Court award an amount to be determined at trial but at least an amount equivalent to treble the amount of Defendant's illicit profits or Plaintiffs' lost profits, whichever is greater.

6. That the Court award an amount to be determined at trial but at least an amount equal to the cost of prospective corrective advertising.

7. That the Court award Judgment against Defendant for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiffs.

8. That the Court instruct and order the United States Patent and Trademark Office to refuse registration of all of defendant's pending registrations containing the mark Vampire including refusing registration of pending applications numbers: 86331348, 86112084 and 86486440 for Vampire Taco and Vampire Style.

9. That the Court Order such other, further and different relief as the nature of this action may require and as the Court may deem just and proper.

10. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiffs, in their discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

Respectfully submitted,

MACHAT & ASSOCIATES, P.C.

Dated: April __7__, 2015        By:   *Michael Machat*

Michael Machat, Esq.

Attorneys for Plaintiffs

14

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury on all issues raised by the Complaint.

                                                             Respectfully submitted,

                                           MACHAT & ASSOCIATES, P.C.

Dated: April __7__, 2015       By:   *Michael Machat*

                                            Michael Machat, Esq.

                                            Attorneys for Plaintiffs

MACHAT & ASSOCIATES, P.C.
9107 Wilshire Blvd., Ste. 425
Beverly Hills, California 90210
Telephone: (310) 860-1833